| | |
|---|---|
| LARRY DENNELL MONK, II, and )<br>A.R.L.M., *a minor*, )<br> )<br>    Plaintiffs, )<br> )<br>v. )<br> )<br>STATE OF NORTH CAROLINA, )<br>HARNETT COUNTY CHILD SUPPORT )<br>ENFORCEMENT, TIFFANY MICHELLE )<br>MCNEILL, and JOHN DOES 1 TO 100, )<br> )<br>    Defendants. ) | **ORDER and<br>MEMORANDUM AND<br>RECOMMENDATION** |

This pro se case is before the court on the motion (D.E. 1) to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(2) by plaintiffs Larry Dennell Monk, II ("Monk") and A.R.L.M., Monk's minor child (collectively "plaintiffs"), and for a frivolity review under 28 U.S.C. § 1915(e)(2)(B). These matters were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), respectively. (*See* 2nd D.E. dated 4 Dec. 2012). For the reasons stated below, the court will allow plaintiff's motion to proceed *in forma pauperis*, but recommend that this case be dismissed for lack of subject matter jurisdiction.

## ORDER ON *IN FORMA PAUPERIS* MOTION

The court finds that plaintiffs have adequately demonstrated the inability to prepay the required court costs. The motion to proceed *in forma pauperis* is therefore GRANTED.

# MEMORANDUM AND RECOMMENDATION ON FRIVOLITY REVIEW

## I.     BACKGROUND

Plaintiff's complaint (D.E. 1-1) consists of a four-page form completed in handwriting (*id.* at 1-4)[1] as well as a two-page typewritten version of the handwritten complaint (*id.* at 5-6). The typewritten version appears to be a verbatim copy of the handwritten version.

In the complaint, plaintiffs allege that the State of North Carolina and Tiffany Michelle McNeill ("McNeill"), A.L.R.M.'s mother, maliciously interfered with plaintiffs' rights to a parent-child relationship and equal protection of the law in causing a restraining order to issue against Monk. (*Id*. at 5). Plaintiffs further allege that the State of North Carolina and Harnett County Child Support Enforcement have ordered Monk to pay an amount of child support not authorized by the North Carolina child support guidelines and have "constantly work[ed] to defame [Monk's] character." (*Id*. at 6). Finally, plaintiffs allege that "[t]he State of North Carolina has violated and is violating [Monk's] right to equal protection from racial and sex discrimination." (*Id*.). However, the complaint contains no specific allegations that would suggest the basis for such discrimination claims. The complaint also contains no allegations with respect to the defendants identified solely as "John Does 1 to 100." (*Id*. at 5-6).

Included with the complaint are seven exhibits (D.E. 1-2) that relate to the North Carolina child custody and support proceedings which are the subject of this action. They include: a 16 June 2009 domestic violence protective order ("DVPO") entered against Monk (*id*. at 1-4)[2]; a 16 June 2009 order awarding McNeill temporary custody of A.L.R.M. (*id*. at 5-6); a motion for modification of child support filed by Monk on 18 April 2011 (*id*. at 7-8); a summons and notice

---

[1] Page citations to the complaint are to the page numbers assigned by the court's CM/ECF electronic filing system.

[2] Page citations to the exhibits in D.E. 1-2 are to the page numbers assigned by the court's CM/ECF electronic filing system.

of hearing on a motion for a DVPO issued 27 March 2009 (*id*. at 9-11); a motion for a DVPO filed 27 March 2009 (*id*. at 12-14); an affidavit of status of a minor child filed 27 March 2009 (*id*. at 15); and a 27 March 2009 ex parte DVPO (*id*. at 16-20).

Plaintiffs seek relief in the form of: (1) "Due process and Equal protection under the law as provided by The U.S. Constitution (Bill of Rights)"; (2) a court order awarding Monk primary custody of A.R.L.M.; (3) $20,000,000.00 in punitive damages; (4) sanctions against the North Carolina courts; and (5) all other remedies the court deems just according to law. (Compl. 6).

## II. DISCUSSION

### A. Legal Standards Applicable to Frivolity Review of Complaint

After allowing a party to proceed *in forma pauperis*, as here, the court must conduct a frivolity review of the case pursuant to 28 U.S.C. § 1915(e)(2)(B). The court must determine whether the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant, and is thereby subject to dismissal. 28 U.S.C. § 1915(e)(2)(B); *see Denton v. Hernandez*, 504 U.S. 25, 27 (1992) (standard for frivolousness). Although in evaluating frivolity a pro se plaintiff's pleadings are held to "less stringent standards" than those drafted by attorneys, *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989), the court is not required to accept a pro se plaintiff's contentions as true, *Denton*, 504 U.S. at 32. Instead, the court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. Such baseless claims include those that describe "fantastic or delusional scenarios." *Id*. at 328. Provided that a plaintiff's claims are not clearly baseless, the court must weigh the factual allegations in plaintiff's favor in its frivolity analysis. *Denton*, 504 U.S. at 32.

The court must read the complaint carefully to determine if a plaintiff has alleged specific facts sufficient to support the claims asserted. *White*, 886 F.2d at 724.

Under Fed. R. Civ. P. 8, a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction . . . [and] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1), (2). Case law explains that the factual allegations in the complaint must create more than a mere possibility of misconduct. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Likewise, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).

A court may consider subject matter jurisdiction as part of the frivolity review. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (holding that "[d]etermining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure"); *Cornelius v. Howell*, No. 3:06-3387-MBS-BM, 2007 WL 397449, at *2-4 (D.S.C. 8 Jan. 2007) (discussing the lack of diversity jurisdiction during frivolity review as a basis for dismissal). "Federal courts are courts of limited jurisdiction and are empowered to act only in those specific situations authorized by Congress." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). The presumption is that a federal court lacks jurisdiction in a particular case unless it is demonstrated that jurisdiction exists. *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 336 (1895). The burden of establishing subject matter jurisdiction rests on the party invoking jurisdiction, here plaintiffs. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction . . . is on the plaintiff, the party asserting jurisdiction."). The complaint must

affirmatively allege the grounds for jurisdiction. *Bowman*, 388 F.2d at 760. If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

One basis for subject matter jurisdiction, so-called federal question jurisdiction, is that a claim arises under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Another basis is diversity of citizenship or so-called diversity jurisdiction, which requires that the citizenship of the plaintiffs be different from that of the defendants. *Id*. § 1332; s*ee Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372-74 (1978). There are also statutes conferring jurisdiction for particular types of cases.

### B. Claims of Race and Sex Discrimination

In the complaint, plaintiffs summarily allege that the state of North Carolina violated Monk's "right to equal protection from racial and sex discrimination." (Compl. 6). However, plaintiffs have alleged no other facts that would support or even suggest that Monk was subjected to discrimination on the basis of his race or sex by defendants. In fact, the complaint contains no indication of Monk's race. Accordingly, the court concludes that plaintiffs have failed to state a claim of race or sex discrimination of any form, and, therefore, these claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Iqbal*, 556 U.S. at 678 (holding that the pleading of a claim is insufficient if it offers only "naked assertion[s]" devoid of "further factual enhancement" (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted))).

### C. Claims arising from North Carolina Child Custody and Support Case

The remaining claims arise out of a North Carolina child custody and support case involving A.L.R.M. Plaintiffs assert that the DVPO and child support order entered against

Monk, as well as the manner in which the orders were obtained, violate certain rights under the First, Fifth, Ninth, and Fourteenth Amendments to the Constitution.[3] In addition to seeking damages for such violations, they request that this court enter an order awarding Monk primary custody of A.R.L.M. The court finds that these claims should be dismissed due to lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.[4]

This doctrine bars federal courts from sitting "in direct review of state court decisions." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-84 (1983). "[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). This doctrine also prohibits a district court from reviewing constitutional claims that are "inextricably intertwined" with a state court decision. *Shooting Point, LLC v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004). A constitutional claim is "inextricably intertwined" with a state court decision if "'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" *Id.* (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)); *see also Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (holding that a federal claim is "'inextricably intertwined" where "in order to grant the federal relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual'" (quoting *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997))). In

---

[3] Though not stated in the complaint expressly, the court assumes that plaintiffs bring these claims for violation of their constitutional rights pursuant to 42 U.S.C. § 1983, which is the primary vehicle for raising such claims in federal court. *See Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (noting that section 1983 provides "'a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes'" (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979))).

[4] To the extent that the unelucidated claims for race and sex discrimination arise from the North Carolina child custody and support case, they are also subject to dismissal under *Rooker-Feldman*.

other words, *Rooker-Feldman* applies "when the federal action 'essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" *Davis v. Durham Mental Health Devel. Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 388 (M.D.N.C. 2004) (quoting *Plyer*, 129 F.3d at 733).

Plaintiffs here were parties in the state court actions that resulted in the challenged orders, and these orders were entered before plaintiffs commenced the present litigation. The injuries plaintiffs allege resulted from these orders. More specifically, plaintiffs allege that the DVPO interfered with plaintiffs' rights to a parent-child relationship and that the child support order violated their due process and equal protection rights.[5]

Further, plaintiffs' request for relief in this case would necessarily require a finding that these orders were improperly entered and unfairly decided by the state court. This is especially true with respect to plaintiffs' request for entry of an order awarding Monk custody of A.L.R.M. Were this court to take such action, it would "render ineffectual" the North Carolina custody and support orders that appear to be currently in effect. *See Jordahl*, 122 F.3d at 202.

At bottom, plaintiffs' claims are merely attempts to challenge the lawfulness of the North Carolina orders and, therefore, should have been pursued through the state appellate process. Therefore, the court concludes that the *Rooker-Feldman* doctrine applies to the claims raised by plaintiffs and, consequently, precludes the court's subject matter jurisdiction over them. Accordingly, plaintiffs' remaining claims, and this case, should be dismissed. *See McAllister v. North Carolina,* No. 5:10-CV-79-D, 2011 WL 883166, at *4 (E.D.N.C. 11 Mar. 2011) (holding

---

[5] Plaintiffs also allege that Harnett County Child Enforcement violated Monk's due process and equal protection rights in calculating his child support obligation "while constantly working to defame [Monk's] character." (Compl. 6). For the purpose of its analysis, the court assumes that this allegation relates to the alleged unconstitutional manner in which Harnett County Child Enforcement violated his rights. Nevertheless, to the extent that plaintiffs are attempting to raise an independent state law claim for defamation, such claim would be subject to dismissal pursuant to 28 U.S.C. § 1367(c)(3) upon the dismissal of all other claims for lack of subject matter jurisdiction as recommended herein.

that the *Rooker-Feldman* doctrine precluded the court's subject matter jurisdiction over plaintiff's claims challenging state court decisions concerning his child support obligations, including his claim that he was "persecuted" during the state proceedings); *see also Richardson v. Green*, No. 5:11-CV-202-H (E.D.N.C. 6 July 2011), *aff'd,* No. 11-1745, 2012 WL 432946, at *1 (4th Cir. 13 Feb. 2012) (concluding that review of a state court child support order was foreclosed by the *Rooker-Feldman* doctrine), *cert. denied*, 133 S. Ct. 296 (1 Oct. 2012); *Kelley v. Saleeby*, No. 4:08-00639-RBH, 2008 WL 3927230, at *2 (D.S.C. 21 Aug. 2008) (applying *Rooker-Feldman* to dismiss plaintiff's complaint seeking to have the district court review and modify child custody orders issued in a state family court case).

### D. Claims by Monk on behalf of A.R.L.M.

Although the court concludes that plaintiffs' complaint should be dismissed for the reasons discussed above, the court alternatively concludes that A.R.L.M.'s claims are subject to dismissal on the grounds that Monk does not have the authority to pursue pro se litigation of them on behalf of A.R.L.M. The Fourth Circuit has held that pro se, non-attorney parents "generally may not litigate the claims of their minor children in federal court." *Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 399 (4th Cir. 2005). While recognizing that "[a]n individual unquestionably has the right to litigate his own claims in federal court," the court clarified that this right to self-representation "does not create a coordinate right to litigate for *others*." *Id*. at 400. The court explained that this rule "ensures the children's interests are not prejudiced by their well-meaning, but legally untrained parents." *Id*. at 401. Accordingly, the court concludes that Monk is not authorized to bring suit on behalf of A.R.L.M. without legal representation, [6] and A.R.L.M.'s claims are subject to dismissal on this independent basis.

---

[6] In *Myers*, the court distinguished between a parent's ability to *assert* a claim on behalf of a child and his authority to *litigate* the claim. *Myers*, 418 F.3d at 400. Thus, while pursuant to Fed. R. Civ. P. 17(b), which requires the

**III.    CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that this action be DISMISSED.

The Clerk shall send copies of this Memorandum and Recommendation to plaintiff, who shall have until 14 January 2013, or such other time as the court directs, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this the 31st day of December 2012.

*[signature]*

James E. Gates
United States Magistrate Judge

---

application of state law, a North Carolina parent may have the right to sue on a minor's behalf in federal court, the parent cannot do so without legal representation. Therefore, in the context of this case, even if Monk is legally authorized to assert claims on behalf of A.L.R.M., he cannot do so in this court without obtaining counsel.